IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| **BRABO INTERNATIONAL** § | | |
| **GROUP INC.** § | | |
| *Plaintiff*, § | | |
| § | Case No. _____ | |
| **v.** § | JURY | |
| § | | |
| **UNITED FIRE & CASUALTY** § | | |
| **COMPANY** § | | |
| *Defendant*. § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Brabo International Group Inc. ("Plaintiff") complains of United Fire & Casualty Company ("Defendant") ("United Fire"), and would respectfully show as follows:

### I.
### PARTIES AND PROCESS SERVICE

1. Plaintiff is a Texas limited liability partnership domiciled in Texas with its principle place of business in Webb County, Texas. Plaintiff's members are citizens of Texas, and therefore for purposes of diversity jurisdiction, Plaintiff is considered a citizen of Texas.

2. Defendant is an insurance company engaging in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Defendant regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. For purposes of diversity jurisdiction, Defendant is not considered a citizen of Texas. Defendant may be served with a Summons or a Waiver of Summons process by serving its designated agent for service: Lance Arnott, 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3140.

### II.
### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns real properties located in Webb County, Texas, and all or a substantial part of the events giving rise to the claim described herein occurred in Webb County, Texas. The insurance policy at issue and of which Plaintiff is a beneficiary was to be performed in Webb County, Texas, and the losses under the policy (including payments to be made to Plaintiff under the policy) were required to be made in Webb County, Texas. Further, investigation, including communications to and from Defendant and Plaintiff (including telephone calls, mailings, and other communications to Plaintiff) occurred in Webb County, Texas.

### III.
### NOTICE AND CONDITIONS PRECEDENT

5. Defendant has been provided notice, in writing, of the claims made by Plaintiff in this complaint, including Plaintiff's actual damages in the manner and form required.

6. All conditions precedent necessary to maintain this action under the policy have been performed, occurred, or have been waived by Defendant, or Defendant is otherwise estopped from raising same due to Defendant's prior breach of the insurance contract.

### IV.
### FACTS

**A. The Properties and The Policy.**

7. This is a claim for insurance proceeds for damages caused by a massive hail and wind storm ("the Storm"). Plaintiff owns two commercial warehouses located at 12122 Jef Drive, Laredo, TX 78045 and 11909 Auburn Road, Laredo, TX 78045 ("the Properties"), which, on the

date of loss referenced above, were insured by insurance policy no. 85318612 and issued by Defendant ("the Policy"). The Properties are large commercial warehouses which have low sloped metal roofing systems.



*12122 Jef Drive, Laredo, TX 78045*



*11909 Auburn Road, Laredo, TX 78045*

**B. Hail & Wind Storm Damage.**

8. On or about May 21, 2017, a massive hail and wind storm (the "Storm") struck Webb County and Laredo, pounding the area with up to golf ball sized hail and caused hundreds of thousands of dollars in damage. As a result of the Storm, the Properties sustained significant damage to their exteriors and roofing systems through which rain water entered the Properties causing interior damage. The roofing systems were damaged so extensively that they no longer can perform their intended functions and must now be replaced. The damages sustained by Plaintiff are covered under the Policy. Prior to the Hail Storm, the roofing systems was performing as intended.



http://www.interactivehailmaps.com/local-hail-map/laredo-tx/#prettyPhoto/17/

The Hail Storm was widely reported by the local news media:

https://www.lmtonline.com/local/article/How-does-Laredo-s-storm-compare-to-the-worst-11173257.php

https://watchers.news/2017/05/22/nuevo-laredo-tornado-thunderstorm/

Numerous videos documenting the extreme nature of the Hail Storm have been uploaded to the internet. The links shown below are a sampling of such videos:

https://www.youtube.com/watch?v=T4a5SzyzdQU

https://www.youtube.com/watch?v=f585C6_wuQo

https://www.youtube.com/watch?v=iZ8Qw4_HL44.

9. As a result of the Storm, the Properties sustained significant damage to their exteriors and roofing systems through which rain water entered the Properties causing interior damage. The roofing systems were damaged so extensively that they no longer can perform their intended functions and must now be replaced. The damages sustained by Plaintiff are covered under the Policy. Prior to the Storm, the roofing systems were performing as intended.

### C. The Claim and Defendant's Failures to Properly Handle the Claim.

10. After the Storm, Plaintiff timely made a claim (claim no. 4220117295) with Defendant and requested payment for damages to the Properties covered by the Policy (the "Claim"). After Plaintiff made the Claim, Defendant failed to comply with the Policy, the Texas Insurance Code and Texas law in handling Plaintiff's claim. Further, Defendant has refused to pay all amounts due and owing under the Policy for the Claim.

11. Thereafter, Defendant assigned the investigation of the claim to Patrick Peden to assist with the investigation and adjustment of the claim. Mr. Peden then retained the services of BSC Forensic Services, LLC ("BSC") and CC Consulting Group to further assist with the investigation of the Properties. BSC has a lengthy and financially profitable history writing one-sided reports that favor positions taken by insurance carriers across Texas. For example, BSC was paid almost $1 million by the Texas Windstorm Insurance Association in 2017 alone.

https://www.twia.org/wp-content/uploads/2018/01/HB3-List-Final-2017-V2.pdf. Moreover, upon information and belief, BSC has been retained by United Fire to evaluate virtually every insurance claim arising from the Storm over the last six (6) months.

12. On October 23, 2017, Matthew G. Spiekerman of BSC began on-site investigations at the Properties. BSC, on behalf of the Defendant, "was asked to determine the extent of wind and/or hail damages." Mr. Spiekerman would go on to conduct six (6) additional on-site inspections before providing a final report to Defendants on February 22, 2019.

### D. Plaintiff is Forced to Adjust Its Own Claim.

13. On June 18, 2018, after Defendant failed to reasonably and thoroughly investigate the Claim, Plaintiff was forced to retain the services of a Texas licensed public adjusting firm, Under Paid Claim, LLC ("UPC") and its own engineering firm, Stolk Labs, to assist with evaluating Plaintiff's losses. UPC promptly advised Mr. Peden of their representation of Plaintiff and their duty to assist Plaintiff in the adjustment of the claim. UPC further offered to make the properties immediately available for further inspection.

14. UPC conducted a detailed investigation into the Claim and determined that the Properties had sustained direct wind and hail damage, and that the hail damage to the Properties' roofing systems resulted in a failure of the roof coverings to perform their intended function to keep out elements over an extended period of time. UPC visually inspected, photographed and prepared an estimate of damage for each of the Properties (the "UPC Estimates"). UPC determined that the replacement cost value to properly and permanently repair the structural damage caused by the hail and wind damage to 12122 Jef Dr. is $305,554.02. UPC further determined that the replacement cost value to properly and permanently repair the structural damage caused by the hail and wind damage to 11909 Auburn Rd. is $305,394.89.

15. Even After UPC provided a detailed investigation report to Defendant, Defendant was still not convinced of the damage, and asked UPC if there was a cause for the leaks. In an email to UPC on September 11, 2018, Mr. Peden asked Plaintiff to provide causation of the leaks on the Properties.

**From:** Peden, Patrick <PPeden@unitedfiregroup.com>
**Sent:** Tuesday, September 11, 2018 12:01 PM
**To:** Sashanelly Ollervidez <Sashanelly@underpaidclaim.com>
**Subject:** RE: 4220117295

I understand that but do you have a cause of the leaks?

Patrick Peden, CPCU, ARM
General Adjuster



Gulf Coast Regional Office
Ph: 713-521-9400
Cell: 832-860-9847
ppeden@unitedfiregroup.com

**From:** Sashanelly Ollervidez <Sashanelly@underpaidclaim.com>
**Sent:** Tuesday, September 11, 2018 11:55 AM
**To:** Peden, Patrick <PPeden@unitedfiregroup.com>
**Subject:** RE: 4220117295

Mr. Peden,

These leaks were reported by client after the hail and wind storm of May 21, 2018. That is why client filed claim due to leaks.

Thank You and Have a Great Day!!

Sashanelly Ollervidez

Public Adjuster
Lic. # 2299257
3607 W. Alberta Rd.
Edinburg, TX 78539
Office: 956-772-4404 Ext. 104
Fax: 956-284-6696

16. Defendant failed to make a claim decision within the four (4) months of UPC trying to assist with resolving the Claim. Desperate to get the Claim resolved, Plaintiff hired legal counsel as a last resort.

17. On March 14, 2019, over **18 months** after the Claim was made, Defendant finally sent Plaintiff a denial letter stating in part:

> BSC Forensics found the following:
>
> - Evidence of hail fall, as detailed in the Evidence of Hail Fall section herein, was limited to recent spatter marks at oxidized surfaces (cosmetic-spatter will fade) and patterned indentations at HVAC condensing unit heat transfer fins at six (6) units (comb heat transfer fins) and lead plumbing vent flashing (cosmetic).
> - The subject building had not been damaged by wind or hail including the metal panel roofing.
> - The reported and observed moisture stains within the buildings were generally the result of moisture penetration through unsealed openings primarily at skylights and/or panel seams and were not associated with a storm created opening, as detailed in the Interior Damage Investigation section herein).
> - Various other conditions and/or damage, detailed in the engineer's report, were attributable to causes other than wind and/or hail.

18. Despite Plaintiff informing BSC and Defendant that its roofing systems were leaking in multiple places, BSC improperly concluded that some of Plaintiff's covered losses fell under a "cosmetic" damage exclusion and were not covered by the Policy.

19. Plaintiff's claim was wrongfully denied. Together Defendant, its personnel and assigned adjusters set out to deny and/or underpay on properly covered damages. Because of this unreasonable outcome-oriented investigation, including the under-scoping of Plaintiff's storm damages during the initial investigation and failure to provide full coverage for the damages sustained, Plaintiff's Claim was improperly adjusted, and Plaintiff was denied adequate and sufficient payment. The mishandling of Plaintiff's Claim has also caused a significant delay in Plaintiff's ability to fully repair its Properties.

20. Rather than accept coverage for the obvious damage caused by the Storm, Defendant relied on BSC's report and pinned the entirety of its underpayment of the Claim on the above "cosmetic" damage exclusion. Defendant improperly concluded that there were no damages resulting from hail or wind to the exterior of the building, and that interior water damage was excluded because it did not result from a storm created opening. Defendant's March 14, 2019 denial letter to Plaintiff states in part:

The inspection determined that there was no wind damage or hail damage to the roof that allowed water to enter the building. As a result of our investigation, United Fire and Casualty will not be able to offer payment for the interior water damage.

We are issuing payment for the damage to the HVAC condensing unit heat transfer fins. That payment will be made under separate cover.

As a result of our investigation, United Fire and Casualty will not be able to offer payment for this claim.

21.     Plaintiff presented a claim under its Policy for damage caused by the Storm. It was Defendant's responsibility, not Plaintiff's, to conduct a reasonable and thorough investigation of the Claim to determine the specific cause of the loss and the amount of loss. Although Defendant and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so. Rather than accept coverage for the obvious damage caused by the Storm, Defendant unreasonably delayed its investigation of the Claim, failed to timely make a claim decision, and grossly undervalued the amount of Plaintiff's covered losses.

22.     Defendant's improper handling of the Claim subjects it to liability pursuant to TEX. INS. CODE § 541.001, *et seq.* and TEX. INS. CODE § 542.051, *et seq*. Defendant violated TEX. INS. CODE § 541.060(a) and engaged in Unfair Settlement Practices by:

   a)    Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue. Rather than fully compensate Plaintiff for its losses, Defendant failed to conduct a reasonable and thorough investigation of the Claim. Moreover, Defendant's reliance on BSC's position that the significant damage was "cosmetic" and "were attributable to causes of other than wind and/or hail" was unreasonable in light of BSC's history of writing virtually identical reports for Defendant.

   b)    Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendant's liability under the Policy was reasonably clear. Defendant acted in bad faith when it ignored the obvious substantial amount of damages to the Properties and failed to properly adjust the Claim, relying on the "cosmetic" exclusion. Moreover, almost immediately after receiving estimates from Plaintiff (who was forced to retain a public adjuster to adequately scope its covered losses), Defendant rejected them without bothering to conduct a reinspection. Despite the multiple efforts of Plaintiff's retained expert to communicate

with Defendant. Defendant held its ground and refused to give any credence or consideration to the estimates and analysis presented by its insured. In addition, Plaintiff has dutifully paid its premiums to Defendant for a number of years, and Defendant had numerous opportunities to inspect and reevaluate Plaintiff's coverages on these buildings' year-after-year (choosing to underwrite this risk and annually cash Plaintiff's annual premium checks).

c) Failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law for Defendant's denial of the Claim or offer of a compromise settlement of the Claim. Defendant notified Plaintiff of the denial in a letter dated March 14, 2019, which was more than eighteen (18) months after the Storm. Defendant's denial of the Claim was unreasonable because the damage to the Properties were caused by hail and wind damage and water damage resulting from the Storm.

d) Refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim. Defendant's investigation was clearly unreasonable because it failed to determine the full amount of Plaintiff's damages, even though the damages were obvious and the true amount of cost to repair the damages was readily ascertainable. BSC performed an unreasonable outcome-oriented investigation, which resulted in a biased, unfair and inequitable evaluation of the Claim. BSC was retained because of their lengthy financial relationship with insurance carriers in general and Defendant was well-aware of BSC's lack of objectivity. Had Defendant conducted a reasonable and thorough investigation of the Claim, it would have concluded the full extent of damage to the Properties were covered by the Policy and could have made a timely decision on the Claim. Of note, Plaintiff is aware of several commercial buildings directly behind the Properties where insurance carrier(s) recognized the severity of damage from the Storm and agreed that new roofing systems would be necessary.

23. Each of the foregoing unfair settlement practices was completed knowingly by Defendant and was a producing cause of Plaintiff's injuries and damages.

24. Defendant took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree and to Plaintiff's detriment. Defendant's acts also resulted in a gross disparity between the value received and the consideration paid in a transaction involving the transfer of consideration. As a result of Defendant's violations, Plaintiff suffered actual

damages. In addition, Defendant committed the above acts knowingly and/or intentionally, entitling Plaintiff to three times its damages for economic relief.

25. Further, Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, et seq. by delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058. Defendant's claim decision letter demonstrates Defendant was in receipt of all items, statements, and forms that it would need to make a claim decision before that date. Defendant had full access to the Properties and plenty of opportunity to investigate the Claim and determine the actual amount of the structural damage caused by the Storm. Thus, because more than 75 days have passed without full payment for the Claim, Defendant has violated the time limits of TEX. INS. CODE §§ 542.058 and 542.059.

### E. Plaintiff's Notice Letter and Defendant's Second Bite at the Apple.

26. On June 1, 2017, Governor Abbot signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of unscrupulous practices. Section 542A.003 in particular requires detailed, comprehensive pre-suit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Plaintiff to avoid protracted litigation over a clear claim.

27. On January 3, 2019, Plaintiff (through its counsel) sent Defendant a letter notifying Defendant of Plaintiff's claims against Defendant arising under Chapters 541 and 542 of the

Texas Insurance Code, as required by TEX. INS. CODE §§ 541.154 and 542A.003 (the "Notice Letter"). The Notice Letter specifically described Defendant's violations of the Texas Insurance Code, using language substantially identical to the allegations contained in this pleading. Further, the Notice Letter provided a comprehensive outline of Plaintiff's claims and damages, and quantified Plaintiff's losses on the Claim (by presenting the detailed expert report and photos from UPC). The unfortunate reality is that Defendant put on a puppet show during the 60-day period following receipt of Plaintiff's 542A notice letter. Every piece of information was readily available to Defendant months before receiving the 542A notice letter. Defendant used its second bite at the apple to try and bolster its position that it was not acting in bad faith – by relying on 'competing expert opinions' where Defendant and Mr. Peden knew their hand-selected experts would attempt to provide them with the cover they needed in this investigation – rather than attempt to adjust the Claim in good faith. Defendant was well-aware of BSC's lack of objectivity in reaching their "cosmetic" damage conclusion, and Defendant's reliance on these reports was unreasonable.

### F. Defendant's Insurance Code Violations.

28. Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant refused to pay for damages owed under the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Properties and all conditions precedent to recovery upon the Policy in question had been satisfied by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

29. Defendant misrepresented to Plaintiff that damage to the Properties were not covered under the Policy, even though the damage was covered by the Policy. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(1).

30. Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim, when Defendant's liability was reasonably clear. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(2)(a).

31. Defendant failed to explain to Plaintiff the reasons for its offer of an inadequate settlement/claim denial. Specifically, Defendant failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendant provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(3).

32. Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant. Defendant issued their first claim decision letter March 14, 2019, which was twenty-four (24) months after the date of loss. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(4)(A).

33. Defendant refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim. Rather, Defendant performed an unreasonable outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(7).

34. Defendant failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's Claim, beginning an investigation of Plaintiff's Claim and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.055.

35. Defendant failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.056.

36. Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendant has delayed full payment of Plaintiff's Claim longer than allowed and, to date, Plaintiff has not yet received full payment for Plaintiff's Claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.058.

37. From and after the time Plaintiff's Claim was presented to Defendant, the liability of Defendant to pay the full Claim in accordance with the terms of the Policy was reasonably clear. However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

38. Defendant knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

39. Because of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm who is representing Plaintiff with respect to these causes of action.

*Brabo International Group Inc. v. United Fire & Casualty Company*
Plaintiff's Original Complaint
Page 14

40. In summary, Defendant has failed to comply with the Policy, the Texas Insurance Code, and Texas Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim. Defendant and its representatives failed to perform a thorough investigation of Plaintiff's claim, failed to employ appropriate or qualified consultants to evaluate the damages, delayed resolution of the claim under Texas law, and misrepresented applicable scopes of damages as well as the terms of the Policy. Adjusters employed by Defendant violated the law through their own acts and omissions in the handling of the Claim. Because of these violations of law and wrongful conduct, Plaintiff has sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorneys' fees, financial harm, and other consequential damages. Accordingly, Plaintiff requests payment for damages to the Properties pursuant to the terms and conditions of the Policy. Plaintiff also requests payment for its attorneys' fees to date.

## V.
## CAUSES OF ACTION

41. Plaintiff incorporates all of the aforementioned facts into its causes of action below for all purposes. Defendant is liable to Plaintiff for breach of contract, as well as intentional violations of the Texas Insurance Code and breach of the common law duty of good faith and fair dealing.

### A. Breach of Contract.

42. The Policy is a valid, binding and enforceable contract between Plaintiff and Defendant. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant's breach proximately caused Plaintiff injuries and damages. All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

### B. Noncompliance With Texas Insurance Code: Unfair Settlement Practices.

43. The conduct, acts, and/or omissions by Defendant constituted Unfair Settlement Practices pursuant to TEX. INS. CODE. § 541.060(a). All violations under this article are made actionable by TEX. INS. CODE § 541.151.

44. Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(1).

45. Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

46. Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

47. Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

48. Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

49. Defendant's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered. Defendant's continued failure to properly handle the Claim compelled Plaintiff to file suit. TEX. INS. CODE § 542.003(b)(5).

### C. Prompt Payment of Claims Violations.

50. The Claim is a claim under an insurance policy with Defendant of which Plaintiff gave Defendant notice. Defendant is liable for the Claim. Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

   a) Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE § 542.055;
   b) Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE § 542.056; and/or by
   c) Delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058.

51. Defendant's violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX. INS. CODE § 542.060.

### D. Breach of The Duty of Good Faith and Fair Dealing.

52. Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear. As previously noted, BSC's report was not

objectively prepared, and Defendant's representatives had implemented bias, one-sided procedures where Defendant knew BSC would find "cosmetic" damage that would result in the denial of Plaintiff's claim. Defendant's conduct proximately caused Plaintiff injuries and damages.

## VI.
## KNOWLEDGE

53. Defendant's acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VII.
## DAMAGES

54. Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

55. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's Claim, together with attorney fees.

56. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include but are not limited to, the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorneys' fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE § 541.152.

57. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's Claim, as well as a statutory interest penalty calculated per annum based on the amount of Plaintiff's Claim, and with attorney's fees. TEX. INS. CODE §542.060.

58.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

59.     For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose names are subscribed to this pleading.  Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## VIII.
## JURY DEMAND

60.     Plaintiff hereby requests a jury trial and tenders the appropriate jury fee.

## IX.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found.  In addition, Plaintiff requests the award of attorneys' fees for the trial and any appeal of this case, for all costs of Court on its behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**LUNDQUIST LAW FIRM**

*/s/   William W. Lundquist*
William W. Lundquist
So. Dist. Texas No. 38019
Texas Bar No.: 24041369
743 W. 18th Street
Houston, TX 77008
Will@LundquistLawFirm.com
Telephone: (832) 255-3014
Facsimile: (713) 583-5586

ATTORNEY-IN-CHARGE FOR PLAINTIFF