IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| BRABO INTERNATIONAL GROUP, INC. | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:19-cv-00066 |
| | § | |
| UNITED FIRE & CASUALTY COMPANY | § | |
| *Defendant.* | § | |

**DEFENDANT'S OPPOSED MOTION TO EXCLUDE OR LIMIT TESTIMONY OF
PLAINTIFF'S EXPERT WITNESSES**

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW Defendant, United Fire & Casualty Company ("Defendant" or "United Fire"), in the above styled and numbered cause, and files this Opposed Motion to Exclude or Limit Testimony of Plaintiff's Expert Witnesses and in support thereof would show the Court as follows:

**RELIEF REQUESTED**

Defendant hereby seeks to limit or exclude testimony from the following experts designated by Plaintiff as either retained or non-retained:

- Blanca Liz Moore;

- unnamed Plaintiff's Representatives;

- IGA Construction LLC;

- Armando Garcia;

- Oralia Rodriguez;

- Cord Largo, Under Paid Claim, LLC;

- Marcos Neri, Integrated Roofing Systems, Inc.;

- Doug Stolk, Stolk Labs, Inc.;

- Brian Craig Johnson; and

- Tom Irmiter, Forensic Building Sciences, Inc.

Additionally, Defendant moves to limit or exclude any expert testimony of David Stolk who has not been designated as an expert witness.

## STATEMENT OF FACTS

1.      Defendant issued insurance policy number 85318612 with effective dates of June 30, 2016 to June 30, 2017 (the "Policy") (attached hereto as Exhibit "A" (UFCC 00001 - 00085). The Policy provides insurance coverage, subject to the Policy's terms and conditions, for covered losses occurring to two properties: 11909 Auburn Rd, Laredo, Texas 78045 and 12122 J E F Dr., Laredo, Texas 78045. *Id.* (at UFCC00004)

2.      The Policy contains endorsement CP 70 66 03 05 titled "Exclusion – Cosmetic or Appearance Loss or Damage" which states,

### EXCLUSION – COSMETIC OR APPEARANCE LOSS OR DAMAGE
### CP 70 66 03 05

* * *

The following language is added to B. EXCLUSIONS in the Causes of Loss – Special Form:

**5.      Cosmetic or Appearance Loss or Damage**

We will not pay for loss or damage caused by the peril of hail that alters the physical appearance of any part of any roof covering made of metal but does not result in damage that allows the penetration of water through the roof covering **or does not result in the failure of the roof covering to perform its intended function** to keep out elements over an extended period of time. This exclusion applies to roof coverings including the roofing material exposed to weather, its underlayments applied for moisture protection and all flashings required in application of the roof covering.

Hail damage to roof coverings that results in damage that will allow the

2

penetration of water through the roof covering **or that results in the failure of the roof covering to perform its intended function** to keep out elements over an extended period of time is not subject to this exclusion.

*Id.* (at UFCC00043) (hereafter the "Cosmetic Damage Exclusion").

3.  Plaintiff alleges that both properties "sustained significant damage to their exteriors and roofing systems through which rain water entered the Properties causing interior damage." (Dkt. #1 at par. 8). Plaintiff's claim was reported to United Fire on or about August 14, 2017 as "damage to roof, due to thunderstorm/heavy rains/60 MPH winds/hail." Exhibit "B" (UFCC 01074).

4.  After investigating Plaintiff's insurance claim, United Fire determined that there was covered damage to some HVAC units at both properties. Exhibit "C" (UFCC 00961 – 00963). The remainder of Plaintiff's claim, specifically damage to the metal roof panels, was denied as excluded under various Policy exclusions, including the Cosmetic Damage Exclusion.

5.  On May 16, 2019, Plaintiff filed suit against United Fire alleging breach of contract, noncompliance with various provisions of the Texas Insurance Code, and breach of the common law duty of good faith and fair dealing. (Dkt. #1 at p. 15-18).

6.  On February 21, 2020, Plaintiff filed its Disclosure of Expert Witnesses setting forth two categories of expert witnesses: (1) Retained Testifying Experts; and (2) Non-Retained Expert Witnesses. (Dkt. #19).

7.  As "Retained Testifying Experts", Plaintiff identified Tom Irmiter of Forensic Building Science, Inc. and Brian Craig Johnson, P.E., S.E. of SRF Consulting as testifying experts on various topics. *Id*. (at p. 1-5). Plaintiff's designations stated that the opinions of Irmiter and Johnson were contained in reports previously produced on December 13, 2019. *Id*. (at p. 4-5).

8.      As "Non-Retained Expert Witnesses", Plaintiff designated Cord Largo of Under Paid Claim LLC under the heading of "Plaintiff and its agents". *Id*. (at p. 8-9). Under the heading "Non-Parties", Plaintiff designated Doug Stolk of Stolk Labs, Inc. (*Id*. at p. 10); and Marcos Neri of Integrated Roofing Systems, Inc. (*Id*. at p. 11). Concerning Doug Stolk, Plaintiff referenced "previously produced metallurgical reports … summarizing their metallurgical testing and findings on various samples from Plaintiff's roof systems." *Id*. (at p. 10). With respect to Marcos Neri, no report was provided, instead Plaintiff simply stated that "Mr. Neri performed temporary repairs to the buildings' roofs approx. 3 months following the Date of Loss, noting the roofs needed to be replaced." *Id*. (at p. 11).

## ARGUMENT AND AUTHORITIES

9.      Challenges to the admissibility of the testimony of experts are governed by Federal Rule of Evidence 702, together with *Daubert*[1] and its progeny. *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310, 314 (5th Cir. 1999).[2] Rule 702 provides that a witness "qualified as an expert . . . may testify . . . in the form of an opinion . . . if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting Fed. R. Evid. 702).

---

[1]   *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[2]   *See also* 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6263 (2d ed.) (collecting cases and noting, "[t]he starting point for analysis [of the admissibility of expert testimony] is that the Federal Rules of Evidence usually control admissibility issues in [diversity] cases because admissibility is generally considered procedural, rather than substantive, in nature").

10.     Courts, acting as gatekeepers, determine whether expert testimony should be presented to the jury. *Daubert*, 509 U.S. at 590–93. The proponent of expert testimony must show by a preponderance of the evidence that: (1) the expert witness is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Id*. at 590-91. An expert witness is qualified by means of his or her "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. To decide whether a qualified expert has reliable testimony, the Supreme Court offered trial courts "a five-factor, non- exclusive, flexible test":

> (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community.

*Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 275 (5th Cir. 1998) (citing *Daubert*, 509 U.S. at 593–95). After a court considers the *Daubert* factors, a court may then consider whether other factors, not mentioned in *Daubert*, are relevant to the case at hand. *Food Lion, Inc.*, 171 F.3d at 312.

11.     "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under Fed. R. Evid. 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). The Court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable … [and] the same kind of latitude in deciding how to test an expert's reliability." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). Its gatekeeper role "is not intended to serve as a replacement for the adversarial system." *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

12.     The burden is on the proponent of the expert testimony to show that the expert's testimony is relevant and reliable. *Daubert*, 509 U.S. at 590–91.

**Motion to Exclude or Limit: Plaintiff's Non-Retained Expert Witnesses**

13.     In contrast to a retained expert witness, a non-retained expert witness' testimony "arises not from his enlistment as an expert, but, rather, from his ground-level involvement in the events giving rise to the litigation." *DiSalvatore v. Foretravel, Inc.*, No. 9:14-CV-00150-KFG, 2016 U.S. Dist. LEXIS 188559 at *5, 2016 WL 7742996, at *2 (E.D. Tex. May 20, 2016) (Giblin, Mag. J.) (citing *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011). But even when a party properly characterizes an expert as non-retained, the party must still comply with Rule 26(a)(2)(C)'s disclosure requirement. *Meier v. UHS of Del., Inc.*, No. 4:18-cv-00615, 2020 U.S. Dist. LEXIS 33082, at *25 (E.D. Tex. 2020).

14.     The purpose of the rule is "to ensure that an opposing party has some notice of what the non-retained expert will testify about." *Everett Financial, Inc. v. Primary Residential Mtg., Inc.*, No. 3:15-CV-1028-D, 2016 U.S. Dist. LEXIS 181517, 2017 WL 90366 at *2 (N.D. Tex. Dec. 19, 2016) (Fitzwater, J.). A proper Rule 26(a)(2)(C) disclosure must state opinions, not merely topics of testimony, and must contain a summary of facts upon which the opinions are based. *Id*. (citations omitted).

15.     "When a party fails to provide a meaningful "summary of the facts and opinions" forming the basis of a testimony, the disclosure is insufficient. *Avneri v. Hartford Fire Ins. Co.*, Civil Action No. 4:16-CV-00917, 2017 U.S. Dist. LEXIS 167662, at *6 (E.D. Tex. 2017) (Mazzant, J.) (citation omitted). And "referral to depositions is not an adequate substitute for the summary required by Rule 26." *Motio, Inc. v. BSP Software LLC*, No. 4:12-cv-647, 2016 U.S. Dist. LEXIS 901 at *8, 2016 WL 74425, at *2 (E.D.Tex. Jan. 6, 2016).

**Blanca Liz Moore**
**Plaintiff's Representatives**

16.    United Fire moves to exclude any expert testimony from Blanca Liz Moore, and

unnamed Plaintiff's Representatives due to Plaintiff's failure to properly disclose them as a non-

retained expert.

17.    Plaintiff's disclosure of Blanca Liz Moore and unnamed Plaintiff's representatives

does not appear to be an expert designation in the traditional context of expert disclosures. Plaintiff

stated the following concerning Ms. Moore and the unnamed Plaintiff's Representatives,

> Ms. Moore has knowledge regarding Plaintiff's insurance claim with
> Defendant, the terms and conditions of the policy, payments associated
> with the claim, the market value of the properties in issue, Defendant's
> handling of Plaintiff's claim, the damage to Plaintiff's properties which
> is the subject of Plaintiff's lawsuit, and the allegations contained in
> Plaintiff's most recent complaint with the Court. Ms. Moore may
> testify regarding any of these issues.

(Dkt. #19 at p. 8).

18.    Plaintiff's designation reads like a fact witness disclosure. However, out of an

abundance of caution, United Fire moves to strike any expert opinion from Ms. Moore and

Plaintiff's Representatives for failure to properly disclose pursuant to FRCP 26(a)(2)(C).

**IGA Construction**
**Armando Garcia**
**Oralia Rodriguez**

19.    United Fire moves to exclude any expert testimony from IGA Construction,

Armando Garcia, and Oralia Rodriguez due to Plaintiff's failure to properly disclose them as a

non-retained expert. Plaintiff's designation of IGA Construction, Armando Garcia, and Oralia

Rodriguez are grouped with its disclosure of Marcos Neri. (Dkt. #19 at p. 11). Plaintiff's disclosure

of Oralia Rodriguez simply states "[l]ocal insurance broker who submitted insurance claim."

Plaintiff's disclosure is entirely deficient and fails to provide any information about any expert

7

opinion or underlying facts of Oralia Rodriguez.

20.    Likewise, Plaintiff's disclosure of IGA Construction and Armando Garcia is lacking any opinions or facts underlying those opinions. Plaintiff appears to state the following about IGA Construction and Armando Garcia,

> The persons or companies identified above worked on the properties to repair the damage stemming from the May 21, 2017 storm, supplied materials used to repair damage to the properties, and/or have knowledge of the claim in issue. Such persons have knowledge regarding the reasonable and necessary cost to repair the wind and hail damage to Plaintiff's properties and the repair methods necessary to properly repair the wind and/or hurricane damage to Plaintiff's property. Plaintiff's contractors may rely upon their respective receipts, invoices and other documents relating to their work performed on the property. Plaintiff would refer Defendant to the documents previously produced by Plaintiff, which provide the best-known contact information for the individuals and entities identified above.

(Dkt. #19 at p. 11).

21.    Accordingly, Defendant moves to strike IGA Construction, Armando Garcia, and Oralia Rodriguez as expert witnesses for failure to properly disclose pursuant to FRCP 26(a)(2)(C) and respectfully requests that the Court not permit any testimony from them on any issue requiring expert opinion.

**Cord Largo, Under Paid Claim, LLC**

22.    Plaintiff's designated Under Paid Claim, LLC, Cord Largo as follows:

> Under Paid Claim LLC and its representatives provided repair estimates and/or leak detection services to the Plaintiff, and may have knowledge of the Claim, the damage to the structure of Plaintiff's properties, communications with Patrick Peden related to the Claim, payments for repairs associated with the Claim, and the allegations contained in Plaintiff's live Complaint.

23.    As an initial matter, Plaintiff's Rule 26(a)(2)(C) disclosure of Under Paid Claim, LLC , Cord Largo is insufficient as it fails to set forth any opinions of Cord Largo or a summary

of the facts relied upon by Largo to form any opinions. Instead, the disclosure is nothing more than the identification of topics that Mr. Lago may testify on.

24.     Additionally, any opinions of Cord Largo concerning causation of alleged damage to the subject properties, the date such occurred, the extent of any alleged hail "damage", whether any "hail" damage is cosmetic or non-cosmetic, as well as the value of such alleged damage should be struck. Largo is not a licensed engineer, or metallurgist. Plaintiff provided no information concerning Largo's education, training, qualifications with respect to hail and/or wind damage to metal roofs of commercial buildings and there is nothing in the record to support Largo is qualified under FRE 702 to offer any such opinion testimony.

25.     Further, the Court should not permit Largo to opine as to when any alleged hail indentations occurred. Largo testified that he went on the roofs of both properties one time in May 2018. Exhibit "D" (at 12:24-13:4; 14:3-5). However Largo testified that he does not know when any alleged hail indentations occurred. *Id*. (at 18:10-11; 19:7-10; 27:6-8; 33:3-5).

26.     Nor should Largo be permitted to testify concerning any alleged wind damage to the properties at issue. Largo testified in his deposition that he did not document any wind damage and could not identify any wind damage from the May 2017 storm. *Id*. (at 34:11-25).

27.     Further, any written reports, estimates, or drawings branded with or produced by "Under Paid Claim" should not be admitted into evidence or their content relied upon by any person. Concerning the Under Paid Claim estimates, Largo testified that he did not prepare them and does not know who prepared the estimates. *Id*. (at 25:6-10; 44:13-15).

28.     Plaintiff provided six documents as being prepared by Under Paid Claim. Exhibit "E". These "reports" are undated, unsigned, not sealed, and are not attributed to any specific person or persons as the author(s). In his deposition, Largo stated that he did not prepare the "reports" and

had no input into the reports, including the photographs. Exhibit "D" (at 27:16-17; 29:22-30:4; 30:8-21; 31:11-32:1; 41:18-25; 42:12-15, 21- 43:4; 45:1-6).  Nor did Largo attempt to correlate leaks to the source of the leak and the cause of the leak. *Id.* (at 48:6-14). Instead, these "reports" were prepared by an independent contractor named Zeke or Ezekial (but Largo did not know how to spell or pronounce the last name). *Id.* (at 28:1-14).

29.    However, "Zeke" has not been designated as an expert or even disclosed as a person with factual knowledge in Plaintiff's discovery. Yet, Irmiter's and Johnson's report accepted these "reports" and based their opinions regarding interior leaks and attempts to allocate damage from various storms exclusively on these reports. Exhibit "F" (at 28:1-6; 89:18 – 90:8; 203:6-18; 271:10-13).

30.    With respect to Plaintiff's scope of designation for Mr. Largo that "the damage to the structure of Plaintiff's properties … payments for repairs associated with the Claim, and the allegations contained in Plaintiff's live Complaint", Largo testified he had no personal knowledge of any of these topics. *Id.* (at 53:1-55:6).

31.    Accordingly, United Fire respectfully requests that Cord Largo not be permitted to offer an expert opinion on the date of loss, causation, or value of the alleged loss concerning the two buildings. Further, United Fire respectfully requests that the Court strike the six Under Paid Claim documents attached here as Exhibit "E" and hold that not only are such inadmissible at any trial in this matter, but no witness be permitted to testify concerning their existence or substance, nor rely on the documents for any part of their opinions in this matter.

**Marcos Neri, Integrated Roofing Systems, Inc.**

32.     Plaintiff designated non-retained expert Marcos Neri as follows:

>      Mr. Neri performed temporary repairs to the buildings' roofs approx. 3
>      months following the Date of Loss, noting the roofs needed to be
>      replaced.

33.     As with the designation of Cord Largo, Mr. Neri's designation fails to comply with

the requirements of FRC 26(a)(2)(C) and should be struck.

34.     Additionally, Mr. Neri's opinions, if any, as to causation and date of loss should be

struck. Mr. Neri testified in his deposition that he considered himself a commercial roofing

contractor and had no specific training from anyone he could recall with respect to storm damage

and had not had any formal training concerning storm damage. Exhibit "G" (at 14:3-15:21). Neri

testified that his area of expertise would be limited to repair or replacement of metal roofs. *Id.* (at

54:20-23). Accordingly, United Fire respectfully requests that the Court strike Marcos Neri as

unqualified to offer expert testimony on hail and/or wind damage to the metal roofs at issue in this

matter.

35.     Mr. Neri also cut samples from the roofs to send to Stolk Labs. *Id.* (at 26:19-22).

However, Mr. Neri could not say why he thought the samples he cut contained hail caused

indentations. *Id.* (at 48:16-24). Nor could Mr. Neri say when any of the indentations in the samples

occurred. *Id.* (at 51:17-52:3). Nor could Neri say whether he observed any damage to the

Galvalume coating on the roof panel samples. *Id.* (at 57:10-13).

36.     Additionally, Neri could not specify or describe any wind damage to the roofs of

the properties. *Id.* (at 52:6 – 52:25).

37.     As such, separate from Mr. Neri's lack of overall qualifications regarding storm

damage, United Fire respectfully requests the Court strike and not permit any testimony or

11

opinions regarding whether or not wind damaged the subject properties; whether or not hail caused

the indentations in the samples he cut from the roofs; when the indentations occurred in the samples

taken from the roof; whether or not there are hail dents in any of the roofs; when any such dents

occurred; and whether or not any such dents caused cosmetic or non-cosmetic damage.

**Doug Stolk, Stolk Labs, Inc.**

38.     Plaintiff designated Doug Stolk as a non-party, non-retained expert witness as

follows:

> Stolk Labs, Inc. ("Stolk") previously produced metallurgical reports to
> the Defendant summarizing their metallurgical testing and findings on
> the various samples from Plaintiff's roof systems. Representatives from
> Stolk have substantial familiarity with Plaintiff's properties and the
> damage caused to the properties' metal roofing systems by wind and
> hail. Due to their extensive familiarity with the properties, it may be
> necessary for Plaintiff to call Mr. Stolk as a witness in this litigation,
> even though Stolk has not been retained by Plaintiff to serve as a
> retained testifying expert witness in this cause. Mr. Stolk is a
> metallurgical engineer with Stolk—a company that specializes in
> evaluating damages to metal buildings. Mr. Stolk or any other
> representative from Stolk are expected to testify consistent with the
> expert reports they previously produced to the Defendant.

39.     Two reports bearing the Stolk Lab's name and signed by David Stolk and signed

and engineering sealed by Doug Stolk were provided by Plaintiff. Exhibit "H". Neither the Stolk

Lab reports nor Plaintiff's designation of Doug Stolk conforms to the requirements of FRCP

26(a)(2)(B) for a retained expert. Further, the scope of the Stolk reports exceeds that of an

unretained expert in that the reports opine on causation and whether or not the roofs will fail to

perform their intended function to keep out elements over an extended period of time.

40.     With respect to Doug Stolk, Defendant also seeks to exclude any testimony from

Mr. Stolk on the grounds that he failed to testify at his depositions, failed to produce the underlying

data upon which his reports are based, and lacks the qualifications to give opinion testimony concerning alleged hail damage to Galvalume coated roof panels.

41.     Doug Stolk's deposition was noticed for two dates: November 16, 2020 at 2:00 pm and November 30, 2020 at 10 am. Exhibit "I". Mr. Stolk did not appear at his first deposition reportedly due to health issues with his wife. Just as his deposition on November 30, 2020 was to start, David Stolk, Doug Stolk's son, called counsel for Plaintiff and stated Mr. Doug Stolk would not be appearing for his deposition as "United Fire had not made financial arrangements to ensure that Dr. Stolk was compensated" for the deposition. Exhibit "J" (at 2:14-16). As a non-retained expert, according to Plaintiff's designation, the Federal Rules of Civil Procedure do not require tender of expert fees to a non-retained expert (outside of the standard witness fee). Doug Stolk's non-appearance for either of his depositions, duly noticed and served[3], should result not only in him not being allowed to testify in this matter, but the opinions and conclusions in his sealed report should be admitted nor relied upon by any person in any evidentiary proceeding or trial of this matter.

42.     Additionally, Stolk Labs refused to produce its underlying data files that resulted in the opinions and conclusions expressed its reports, claiming that such were privileged file materials belonging to Marcos Neri. Exhibit "L" (at 9:15-10:5). This data contains such information as how Stolk reached the conclusion that "loss of roof life may be estimated from its percentage of the oxidized coating thickness in an unaffected area, e.g. a loss of 67%." Exhibit "H" (at Brabo 000069); *see also* Exhibit "L" (at 154:2-18).  Because Stolk has failed and refused

---

[3] Prior to his deposition, Mr. Doug Stolk retained Mr. Peter Stanton as his counsel. Notice of both depositions of Doug Stolk was served on Mr. Stanton by agreement. Exhibit "K".

to produce its underlying data files, United Fire respectfully moves this Court to strike the two Stolk Lab reports and not permit any person to rely on or refer the reports at any trial in this lawsuit.

43.     Further, Plaintiff did not produce any *curriculum vitae*, resume, or other information concerning the qualifications of Doug Stolk to assess, analyze, and opine on alleged hail damage to metal roof panels. This includes whether or not hail caused any damage versus other causes, when any such damage occurred, the extent of such damage, and whether or not such damage will have any impact on the panel over an extended period of time. Accordingly, pursuant to FRE 702, Doug Stolk should not be permitted to testify in this matter, and the opinions and conclusions in his reports should not be admitted nor relied upon by any person in any trial of this matter.

**David Stolk**

- **Not designated as expert witness**

44.     Plaintiff did not specifically designate David Stolk as an expert in this matter, either as retained or non-retained. Plaintiff did identify David Stolk in its First Amended Initial Disclosures of October 1, 2020 and as a person Plaintiff expected to call to trial (in Plaintiff's First Amended interrogatory answers served on October 1, 2020).

45.     In Plaintiff's First Amended Initial Disclosures, Plaintiff stated the following about Stolk Labs, Inc., David Stolk, and Doug Stolk:

> Stolk Labs, Inc. ("Stolk") previously produced metallurgical reports to the Defendant summarizing their metallurgical testing and findings on the various samples from Plaintiff's roof systems. Representatives from Stolk have substantial familiarity with Plaintiff's properties and the damage caused to the properties' metal roofing systems by wind and hail. Mr. Stolk is a metallurgical engineer with Stolk—a company that specializes in evaluating damages to metal buildings. Mr. Stolk or any other representative from Stolk are expected to testify consistent with the expert reports they previously produced to the Defendant.

14

Exhibit "M" (at p. 3).

46.     Plaintiff's identification of David Stolk in its amended disclosures is virtually identical to the expert designations identifying Doug Stolk. Nothing in Plaintiff's amended disclosures sets forth what David Stolk will testify to as distinguished from Doug Stolk. Further, as David Stolk is not a metallurgist, it appears that Plaintiff's amended disclosures provide no information as to David Stolk (i.e., David Stolk is not the "Mr. Stolk" referred to in the disclosures).

- **David Stolk should not be permitted to testify concerning causation, lab tests, or interpreted results of those tests.**

47.     Additionally, although the Stolk Lab reports are signed by both David Stolk and Doug Stolk, the reports in themselves do not make any distinction as to who wrote what portion and whose opinions and conclusions are set forth in the reports. During his deposition, it appears that David Stolk conducted some of the underlying lab work and the results of that work appear to be his work product. However, because Doug Stolk is the licensed professional engineer on the reports, United Fire contends that the interpretation of the data, conclusions, and opinions contained in the reports, should be attributed to Doug Stolk, and struck for the same reasons as set forth above as it concerns Doug Stolk.

48.     Further, as noted above, the Stolks, and David Stolk in particular, refused to produce the underlying raw data files from which the lab results were derived. Plaintiff has not produced any reference material allegedly reviewed by David Stolk in preparation for his deposition testimony. Notwithstanding Plaintiff's disclosure, David Stolk has no factual knowledge concerning the properties as he has never been to either property (Exhibit "L" (at 11:11-13); did not personally remove any samples for testing (*Id*. at 11:15-20; 14:6-8); does not know

when any indentations in the samples were made (*Id*. at 14:23 – 15:12); and is not sure what made the indentations (*Id*. at 15:13-16:13).

-   **David Stolk should not be permitted to testify concerning coating loss or time loss.**

49.     Additionally, although in the Stolk Lab Reports there are statements that the hailstone impact regions "showed a significant loss of roof panel integrity" that "resulted in a direct loss of expected roof performance and lifespan, and hail "greatly diminished the expected lifespan of the roof" (Exhibit "H" (at Brabo 000064, 000070, 000285, 000291)), during his deposition, David Stolk refused to answer questions concerning how much of the roof life (in time) has been lost due to hail. Exhibit "L" (at 52:6-54:24; 159:9-14). Accordingly, the Court should not permit any testimony from David Stolk concerning how much life the roofs may have lost due to hail nor any opinions on the percentage of alleged life lost due to hail.

50.     David Stolk also testified that, in his opinion, 4 years after the hail storm there would be red rust in hail indents (Exhibit "L" (at 150:21-151:7)) and that in 5-10 years holes or penetrations would occur in the hail dents (*Id*. (at 198:11-19)). There is no scientific basis for these opinions and United Fire objects to the admissibility of any opinion by David Stolk concerning when red rust and/or rust caused penetrations would appear in the roofs of the properties at issue.

51.     Further, Plaintiff did not produce any *curriculum vitae*, resume, or other information concerning the qualifications of David Stolk to assess, analyze, and opine on alleged hail damage to metal roof panels. This includes whether or not hail caused any damage versus other causes, when any such damage occurred, the extent of such damage, and whether or not such damage will have any impact on the panels over time. Accordingly, pursuant to FRE 702, David Stolk should not be permitted to testify in this matter, and the analysis, opinions, and conclusions in the Stolk Lab reports should be admitted nor relied upon by any person in any trial of this matter.

16

52.    Accordingly, United Fire respectfully moves the Court to strike the Stolk Lab reports, including the portions containing lab results, and not permit such to be admitted into evidence for any reason in this matter, nor allow any person to reference or rely on such lab results or data. Further, United Fire requests that the Court not permit David Stolk to offer testimony or opinions in this matter.

**Motion to Exclude or Limit: Plaintiff's Retained Expert Witnesses**

      **FBS Reports – Brian Craig Johnson and Tom Irmiter**

53.    Plaintiff produced two reports from Forensic Building Science, Inc. ("FBS"), one for the property at 11909 Auburn (Exhibit "N") and one for 12122 J E F Dr. (Exhibit "O"). The reports are signed and sealed by Brian Craig Johnson, Texas licensed profession engineer. The reports were also signed by Jeremy Lansdown and Tom Irmiter. Johnson and Irmiter were designated as retained testify experts. The reports contain conclusions which United Fire challenges as being inadmissible under FRE 702.

-    **FBS opinions on hail damage should be struck**

        **-    Stolk Reports unreliable**

54.    FBS contends that the metal roof panels sustained "damage" from hail to 80% of the overall roof area. Exhibit "N (at Brabo 002090) and Exhibit "O" (at Brabo 002498). The FBS Reports claim that such "damage" was "consistent with damaged samples from the same roof submitted to and tested by Stolk Lab." *Id.* However, Irmiter, in his deposition, testified that he has no independent opinions concerning alleged hail damage outside of what is contained in the Stolk Labs reports and that they are relying on Stolk regarding hail. Exhibit "F" (at 6:19-7:22; 31:5-13).

55.    FBS has done nothing to independently assess the Stolk reports for accuracy or reliability. Irmiter testified that all he had seen was the reports themselves, had not met the Stolks,

been to their lab, did not know their qualifications, and did not know who they were. Exhibit "F" (at 31:14-32:7).

56.     Likewise, FBS' opinions of corrosion in the hail dents relies exclusively on the Stolk reports. Exhibit "P" (at 76:10-15; 138:3-10).

-     **FBS cannot date the hail**

57.     Not only can FBS not date the alleged hail that made indentations in the samples sent to Stolk, FBS cannot date what hail may have fallen and when at the properties. Irmiter testified that more than one hail even has occurred at the properties. Exhibit "F" (at 163:17-164:1). Exhibit "4" to Irmiter's deposition is a list of hail events in the vicinity of the properties since 1999 showing numerous hail events. Exhibit "Q".  Irmiter testified that he did not review or discounted all hail history for the properties before 2007, despite the roofs being original to the buildings construction in in 1999 (Auburn) and 2001 (J E F), per the Webb County Appraisal District. Exhibit "F" (at 67:1-6; 71:24-72:1). The reasons Irmiter only looked at 10 years of hail history was his opinion that Galvalume coated metal roof panels show "lots of rusting occurring" within an 8-10 year period. *Id*. (at 68:5-20). However, there is no scientific basis for Irmiter's opinion that rust will appear in a hail dent within 8-10 years of the occurrence of the hail.[4]

58.     Accordingly, as it concerns alleged hail damage to the metal roofing systems at both properties and when such alleged hail damage occurred, United Fire respectfully requests that FBS (Irmiter and Johnson) not be permitted to express any opinions or conclusions.

59.     Further, as previously urged, United Fire requests that FBS not be permitted to rely on, quote from, or base any opinions on the Stolk Lab reports.

---

[4] Irmiter testified that he had seen such in some "metal roofing products out of China" but had not performed any tests on the roofs at issue to confirm any of that. Exhibit "F" (at 74:1-14).

-    **FBS wind damage theories are not supported in science and are not reliable.**

60.    In section 8.2 of the Auburn report and section 8.4 of the J E F report, FBS opines that wind damaged the metal roof panels causing "metal crimping, uplift, permanent panel distortion, seam separation, and storm created openings" Exhibit "N" (at Brabo 002091) and Exhibit "O" (at Brabo 002499). FBS also contends that winds damaged exterior components of the buildings such as the concrete walls. *Id*. (at Brabo 002081). Neither Irmiter nor Johnson knows what the wind speeds were at the two properties on May 21, 2017. Exhibit "F" (at 56:12-16) and Exhibit "P" (at 204:11-21).]

61.    Further, neither Irmiter nor Johnson base their estimation of wind speed on the generally accepted Enhanced Fuijita scale, which is applicable to straight-line winds. Exhibit "F" (at 57:14-18) and Exhibit "P" (at 203:14-22). FBS' conclusions that wind damaged the concrete walls and the roofs of the properties causing oil canning, shifting of panels, bending or shearing of screws, and separation of panels at end laps is not scientific, not based on any scientific principles, nor is it based on the actual weather data from May 21, 2017. The weather data sourced by FBS reported only 1 measured wind event on May 21, 2017 and that was at the Laredo airport – not at the subject properties, and was much lower than the 90 mph wind claimed by Irmiter. Exhibit "F" (at 204:2-10). Further, the estimated high wind that was reported to occur in Laredo on May 21, 2017 did not occur at the properties but was reported along a narrow corridor south and east of the properties.[5] No observed damage, such as trees downed, tree limbs or branches

_____

[5] "Damage survey in connection with a severe thunderstorm revealed straight-line wind damage along a line around 5 miles in length and 1 mile in width across northwest Laredo. *The damage was from west of the intersection of Interstate 69W and Mines Road to the intersection of east Del Mar Boulevard and McPherson Road.* Damage was widespread through this area with numerous large tree limbs snapped, shingle damage to homes, dozens of utility poles bent or broken." Exhibit "N" (at Brabo 002063) (emphasis added).

broken, utility poles bent or broken, overturned tractor trailers, wind-blown debris or trash was reported at even next to the properties as a result of the May 21, 2017 storm.

62.     Instead of using reliable scientific grounds, and despite the lack of any evidence of high winds at the properties, FBS claims wind damage to the buildings due to the mere *ipse dixit* of Irmiter and Johnson. In other words, because there may have been high winds somewhere in Laredo on May 21, 2017, therefore, FBS concludes that there is wind damage at the subject properties. Yet, some of the "damage" they claim can only be seen if the roof is wet and certain camera tricks are used to photograph the "damage". Exhibit "F" (at 144:7-145:14). Other wind damage claims of FBS either cannot be confirmed visually (bent or sheared screws, seam shifting (Exhibit "F" (at 159:20-22)) or can be confirmed (clips breaking or detaching) but FBS made no effort to objectively confirm or document. Exhibit "P (at 143:16-144:8).

63.     Additionally, FBS contends that the wind of May 2017 caused oil-canning on both roofs. Exhibit "F" (at 145:19-21). According to the Metal Construction Association ("MCA"), oil-canning refers to physical distortions in the flatness of metal. Oil canning does not have any adverse effect on the structural integrity or the weather-proofing capability of the panel. According to the MCA oil-canning is not a performance issue but an aesthetic one.[6] The cause of oil-canning (residual stresses within the roof panel) is manufacturing or installation related. However, FBS claims severe oil-canning occurred on these roofs due to wind. Exhibit "F" (at 145:19-146:21). Yet there is no scientific basis or support for FBS' opinion that oil-canning is wind related, either in general or with respect to these properties.

---

[6] Section 10.8 of the MCA Roof Installation Manual. See Exhibit "F" (at 151:6-16).

64.     As such, the opinions of FBS (Irmiter and Johnson) regarding alleged wind damage to the properties during the May 21, 2017 event are unreliable and inadmissible under FRE 702 and *Daubert*.

-     **Interior leaks**

65.     FBS did not determine whether the roofs of the buildings were leaking, the location of the leaks, or the cause. FBS cannot distinguish between pre-storm leaks and alleged leaks occurring after the May 2017 storm. *See* Exhibit "F" (at 223:25-224:6).

66.     Instead, for its reports, FBS relied exclusively on the Under Paid Claim reports to reach an opinion that the roofs were leaking after the storm and that those alleged leaks were new. Exhibit "F" (at 203:5-18; 270:16-271:13).

67.     Accordingly, for the reasons set forth herein as to the lack of admissibility of the Under Paid Claim reports, and due to the lack of independent assessment or confirmation by FBS, United Fire respectfully requests that the Court not permit any testimony from Irmiter or Johnson on the alleged leaks in the buildings, when such leaks began, whether such leaks were new leaks occurring only after the May 2017 storm, or the source or the cause of the leaks.

## CONCLUSION AND PRAYER

**WHEREFORE**, Defendant, United Fire & Casualty Company, respectfully requests that the Court grant its Opposed Motion to Exclude or Limit Testimony of Plaintiff's Expert Witnesses and grant any further relief to which Defendant may show itself justly entitled.

Respectfully submitted,

GAUNTT KOEN BINNEY & KIDD, LLP


By: _/s/ David P. Andis_____
       David P. Andis
       State Bar No. 00793265
       Southern District Federal ID: 19480
       Attorney in Charge
25700 I-45 North, Suite 130
Spring, Texas 77386
Telephone:    281-367-6555
Facsimile:    281-367-3705
Email: david.andis@gkbklaw.com
Counsel for Defendant


Of Counsel for Defendant:

    J. Chad Gauntt
    State Bar No. 07765990
    Southern District Federal ID: 14135
    Gauntt Koen Binney & Kidd, LLP
    25700 I-45 North, Suite 130
    Spring, Texas 77386
    Telephone:    281-367-6555
    Facsimile:    281-367-3705
    Email: chad.gauntt@gkbklaw.com


## CERTIFICATE OF CONFERENCE

    I hereby certify that I have communicated with Mr. Will Lundquist, counsel for Plaintiff, about this matter. Mr. Lundquist has advised that he is opposed to Defendant's Motion to Exclude or Limit Testimony of Plaintiff's Expert Witnesses.

    _/s/ David P. Andis_____
        David Andis

## <u>CERTIFICATE OF SERVICE</u>

This pleading was served in compliance with Rule 5 Federal Rules of Civil Procedure on January 14, 2021 via facsimile, first class regular mail, certified mail, return receipt requested and/or electronically.

William W. Lundquist (SBN: 24041369)
Lundquist Law Firm
743 W. 18th Street
Houston, TX 77008
Telephone:     832-255-3014
Facsimile:     713-583-5586
Email: will@lundquistlawfirm.com
Attorney for Plaintiff

_/s/ David P. Andis_____
David Andis